IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| PAUL L. McMILLIN, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:05-cv-00493 |
| | ) | Phillips/Guyton |
| TUSCULUM COLLEGE, | ) | |
| | ) | |
|    Defendant. | ) | |

**MEMORANDUM AND ORDER**

The plaintiff filed the instant suit alleging fraudulent misrepresentation and discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"). The defendant has filed a motion to dismiss, or in the alternative, for summary judgment [Doc. 31] pursuant to Rules 12(b) and 56(b) of the Federal Rules of Civil Procedure, and the plaintiff has responded in opposition [Docs. 43, 46, and 47]. For the reasons that follow, defendant's dispositive motion [Doc.31] is **GRANTED**.[1]

**I.**     **Facts**

As the law requires, all disputed facts and inferences are resolved most favorably to the plaintiff. Furthermore, the Court merely provides an abridged summary of relevant facts for the purposes of this opinion.

---

[1] The plaintiff has requested oral argument with respect to defendant's dispositive motion [Doc. 50]. However, the Court has reviewed the briefs and evidence submitted and does not feel that oral argument is necessary. Therefore, plaintiff's request for oral argument [Doc. 50] is denied.

1

Specifically, the instant suit involves two claims: 1) discrimination based upon plaintiff's Caucasian race under Title VI; and 2) defendant's fraudulent misrepresentation regarding its probationary status while the plaintiff was enrolled in defendant's courses.

### A. Title VI claim

In November of 2002, the plaintiff Paul McMillin ("McMillin"), a retired Los Angeles police officer, enrolled in the Gateway Program at Tusculum College ("College"). After completion of the Gateway Program in April of 2004, the plaintiff registered for the College's Graduate and Professional Studies Program ("Graduate Program"). As a graduate student, the plaintiff was placed on an academic plan. As such, the plaintiff was assigned to a group, known as a cohort, and registered in a proper sequence of course work with his cohort to continue through the completion of the Graduate Program. The sequence of course work is known as the "lock step" sequence.

It appears from the record that during plaintiff's academic endeavors at the College, plaintiff disagreed with many of the policies and practices of the school. Among other points of contention, plaintiff found the faculty's supervision of students in their projects to be inadequate; was dissatisfied with testing and grading procedures; and believed that the College improperly handled situations personal to him. The record is replete with plaintiff's formal grievances to the College and the College's responses. However, in the subject suit regarding discrimination, plaintiff refers only to one incident in which he claims that the College was motivated by racial amicus. In particular, the plaintiff asserts that he was

discriminated against when the College disallowed him to enroll and participate in a certain graduate course, which also prevented him from using federally subsidized/unsubsidized student loan money.[2]

Chronologically, the record reflects that on September 9, 2004, the plaintiff submitted a request to drop course MGMT 330, which plaintiff was scheduled to take with cohort BS 430, and to add the course with cohort BS 432. On September 10, 2004, Craig Layman, the College's Director of Academic Advising, told the plaintiff that he could process his request to drop course MGMT 330 with cohort BS 430, but that he could not enroll him in the same course with cohort BS 432 because "that would get him out of sequence with all of the other classes for which he had pre-registered." Layman told the plaintiff that in order to make the requested change, plaintiff would need to meet with the Department Chair and himself to work out the details. However, the plaintiff felt that he was entitled to make the change requested without meeting with the Department Chair and Layman and, therefore, refused to attend any meeting. Specifically, the plaintiff believed that another student, Juwanza Smith-Figueroa ("Smith-Figueroa"), who is African-American, was permitted to change a course registration to effect a change in cohorts without a meeting with administration. In other words, plaintiff believed that requiring him to attend a meeting with administration would be in effect disparate treatment based upon race.

---

[2]During the plaintiff's schooling, he used the United States Department of Education Federally Subsidized/Unsubsidized student loan funds for tuition payment, books, and other related supplies.

On October 18, 2004, plaintiff began course MGMT 330 with cohort 432, which was instructed by Tom Dorsey ("Dorsey"). Upon plaintiff's arrival, Dorsey advised the plaintiff that he had been directed not to grade any of the plaintiff's course work because the plaintiff was not in fact registered for the class. Dorsey also advised the plaintiff to contact administration. Despite being told that he was not registered in course MGMT 330 with cohort 432, plaintiff again arrived for class in course MGMT 330 with cohort 432 on October 25, 2004. Plaintiff was then approached by William T. Cox ("Cox"), Assistant Dean and Director of the Knoxville Center. Cox reiterated that the plaintiff was not registered for the class and that the plaintiff could not attend the course session. The plaintiff responded that he would not leave the class session. Cox then prepared and delivered a letter to the plaintiff, explaining that plaintiff's failure to attend a meeting with administration resulted in the College's rejection of plaintiff's drop/add request. Further, the letter advised plaintiff that he could not attend course MGMT 330 with cohort 432, else he would be trespassing.

Thereafter, the plaintiff was offered the opportunity to re-attend class at the College; however, this option would delay the plaintiff's graduation by five months. Further, the plaintiff was offered the opportunity to enroll in courses in Morgan County. Ultimately, the plaintiff did not accept any of these alternatives.

### B. Fraudulent misrepresentation

It appears from the record that the College was placed on academic probation by

4

the Southern Association of Colleges and Schools ("Southern Association") for a period beginning December 11, 2001 and ending on December 9, 2003. The plaintiff alleges that he was never told prior to enrollment nor during his studies with the College that the College was placed on probation. Plaintiff asserts that he was initially informed of the College's probation status on or about September of 2004 and, further, that he was aware that the defendant was engaged in fraud through misrepresentation with respect to College's probation in November of 2005.

In plaintiff's response to the defendant's dipositive motion, he states the following in relevant part:

> "[My] cause of action for Fraudulent Misrepresentation is not bourn (sic) from any single act of Defendant failing to tell the Plaintiff all the facts about the educational program. There is clearly a certain amount of disgust that goes along with paying for a product or service and finding later that the product or service was deficient . . . . Plaintiff is asking this Court to look at the greater picture; fraud in the context of misrepresentation."

In other words, plaintiff points to no specific act, representation, or omission of defendant. There is no evidence in the record that the College attempted to conceal the fact that the College was on probation for the relevant period. The College has submitted several affidavits in that regard, including the affidavit of Denise Woods ("Woods"), the former Vice President for Extended Education of Tusculum College and who currently is suing the College in an employment discrimination lawsuit. While the plaintiff baldly asserts that Woods supports his claims, Woods' affidavits clearly state that the College made no efforts to conceal the probation and that she personally spoke with several students and potential

5

students during the period and advised them fully of the College's probationary status and answered any other questions they had.

Moreover, neither the College's accreditation nor the transferability of any student's grades were adversely affected by the fact that the College was on probation with the Southern Association for the relevant period.

    C.  Plaintiff's litigation involving the College

From 2002 through 2006, the plaintiff filed four lawsuits against Tusculum College, prior to the instant action. While suits one, two, and four were dismissed without prejudice, plaintiff's third suit, *Paul L. McMillin v. Tusculum College (Graduate and Professional Studies), Knox Circuit No. 3-696-04* ("Knox Circuit 3-696-04") was dismissed on the merits by summary judgment.

In particular, plaintiff's third suit included claims for outrageous conduct, negligence, and breach of contract. Further, the plaintiff alleged the quality of his education was lessened because the College did not follow proper policies and procedures and because the College was on probation by the Southern Association. This latter allegation was raised in plaintiff's proposed Second Amended Complaint. While the Circuit Judge denied the plaintiff's motion to file his Second Amended Complaint, the Judge specifically held that all allegations of plaintiff's proposed Second Amended Complaint were either alleged in or could be proved under the allegations of his Amended Complaint.

## II. Standard of Review

Before the Court is a motion to dismiss or, in the alternative, for summary judgement by defendant College. While styling the motion as one for dismissal and/or summary judgment, in its memorandum in support of the motion, the defendant argues from the summary judgment point of view. The Court notes that Fed.R.Civ.P 12(b) requires the Court to treat the motion to dismiss under Fed.R.Civ.P. 12(b)(6) as a motion for summary judgment if matters outside of the pleadings are presented to and not excluded by the Court. The Court will therefore consider the motion as only one for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial

simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

### III. Motion for summary judgment and applicable law

#### A. Claim preclusion

Claim preclusion bars a second suit between the same parties and their privies on the same cause of action as to all issues that were or could have been litigated in the former suit. *Boring v. Miller*, 386 S.W.2d 521 (Tenn. 1965). The purpose of the doctrine is two-fold: (1) that the parties should not be required to litigate anew in the same capacities matters that were or could have been determined in a prior action, and (2) that public policy dictates that litigation be determined with reasonable expedition and not protracted through inattention and lack of diligence. *Webb v. Schultz*, 218 S.W.2d 758, 764 (Tenn.Ct.App. 1948). Claim preclusion promotes finality in litigation. *Moulton v. Ford Motor Co.*, 533 S.W.2d 295 (Tenn. 1976). It does not depend on the correctness or fairness, as long as the underlying judgement is valid. *Id.* at 296.

Claim preclusion requires four elements of proof: (1) that the instant action involves the same two parties; (2) that the instant action arose out of the same transaction or occurrence that was the subject of earlier actions; (3) that the instant action could have been asserted in at least one of those previous actions;[3] and (4) that there was a final decision on the prior action by a court of competent jurisdiction. *Davis v. Sun Oil Co.*, 148 F.3d 606, 611 (6th Cir.1999) (per curiam); *In re Fordu*, 201 F.3d 693, 703-04 (6th Cir. 1999); *Apseloff v. Family Dollar Stores Inc.*, No. 06-4200, 2007 WL 1654397, at *2 (6th Cir. June 7, 2007).

The first and fourth elements are obviously undisputed and, therefore, warrant no discussion. As to the second and third elements, the Court analyzes and compares the pleadings between the instant action and Knox Circuit 3-696-04, as set forth below:

1. In Knox Circuit 3-696-04 in his proposed Second Amended Complaint, plaintiff alleged:

> "14. . . . On September 10, 2004, McMillin received a recorded telephone message from Tusculum requesting another meeting with McMillin. Upon advising Tusculum of McMillin's unavailability for this second meeting, Tusculum e-mailed McMillin advising that the 'drop' for BS430/MGMT300 (?) Would be processed, but the 'add' for BS432/MGMT330 would not."

---

[3]As to the second element, some Sixth Circuit cases substitute the term "should" with "could." *E.g. Mitchell v. Chapman*, 343 F.3d 811, 819 (6th Cir. 2003); *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995). Although either term could be employed in the instant case to yield the same result, the Court defers to the United States Supreme Court's analysis in *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981), in which the term "could" is utilized.

In his First Amended Complaint in the instant case, the plaintiff alleges:

"1) On September 10, 2004, plaintiff was notified that the processing of plaintiff's course documents would not be performed without plaintiff meeting individually with the academic advisor, for the second time; this process was not a requirement of any other student. A formal, internal appeal was filed, but no response was received."

2. In Knox Circuit 3-696-04 in his proposed Second Amended Complaint, the plaintiff alleged:

"On October 25, 2004, while attending the BS432/MGMT 330 course, McMillin was presented with a letter to vacate Tusculum property under threat of trespass. Several reasons were cited for the issuance of the letter to include:

a. McMillin had refused to attend a meeting 'requested' by Tusculum;
b. McMillin was not registered for BS432/MGMT 330 and;
c. McMillin and (sic) had not paid for the BS432/MGMT 330 course."

In his First Amended Complaint in the instant case, the plaintiff alleges:

"1.) On October 25, 2004, Plaintiff was threatened with trespass for continued attendance in class, taking the course required in the pre-arranged academic plan; this after meeting all registration requirements and providing tuition payment."

3. In Knox Circuit No. 3-693-04 in his proposed Second Amended Complaint the plaintiff alleged:

"36. On September 29, 2004 McMillin learned that Tusculum College had been on probationary status through the Commission on Colleges/Southern Association of Colleges and Schools, the accrediting agency for Tusculum College. The probation was in effect during the time that McMillin was attending Tusculum College and was terminated on or about December 1, 2003. The violations which resulted in the probation were directly linked to

the support which McMillin was guaranteed and was paying as a condition of the contract with Tusculum College; these to include Tusculum's planning and evaluation processes, faculty, and library/learning resources. McMillin was never informed about this probation or the identified deficiencies. Only through an investigation undertaken by McMillin was this probation discovered."

In his First Amended Complaint in the instant case, the plaintiff alleges:

"a) On or about December 1, 2002, Defendant was placed on probation by the Southern Association of Colleges/Commission on Colleges. This organization is the accrediting agency for Defendant. At no time did Defendant inform Plaintiff of this probationary status, but fraudulently misrepresented through omissions, concealment of facts and negligence, the wholeness of the program through personal tours, meetings with faculty and media presentations;"

The excerpts above clearly demonstrate an identity between the prior and present action. Additionally, the Court finds that the plaintiff could have, and should have, asserted his fraudulent misrepresentation claim, as well as the his Title VI discrimination claim, *see Poling v. Goins*, 713 S.W.2d 305 (Tenn. 1986) (holding that suits on claims of violation of federal civil right's acts may be maintained in Tennessee state courts), in the prior state court action, Knox Circuit 3-696-04. In sum, the Court finds that the plaintiff's present and former suit all involve the same transaction, and res judicata, or claim preclusion, prevents the plaintiff from litigating piecemeal different causes of action arising out of this transaction. *Apseloff*, 2007 WL 1654397, at *3. Accordingly, plaintiff's entire cause of action is barred by the doctrine of claim preclusion.

B. <u>Fraudulent Misrepresentation</u>

Even if the plaintiff's fraudulent misrepresentation claim was not barred by claim preclusion, it would not succeed on the merits. The basic elements of a fraud cause of action are: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity; (3) an injury caused by reasonable reliance on the misrepresentation; and (4) the misrepresentation involves a past or existing fact. *Oak Ridge Precision Industries, Inc. v. First Tenn. Bank Nat'l Assoc.,* 835 S.W.2d 25, 29 (Tenn.Ct.App. 1992); *Kincaid v. South Trust Bank*, 221 S.W.3d 32, 40 (Tenn.Ct.App. 2006). For the purpose of considering a plaintiff's claim, the terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. See *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 905 n. 1 (Tenn.1999).

In the instant matter, the plaintiff does not point to a particular act or omission, but rather asks the Court "to look at the greater picture; fraud in the context of misrepresentation." The Court is uncertain as to how to interpret this request for relief and further does not believe that the plaintiff has established an intentional misrepresentation, even when the facts are viewed in the light most favorable to the plaintiff. Nonetheless, the Court finds that the plaintiff has not articulated an injury sustained as a result of an alleged misrepresentation. Neither the College's accreditation nor the transferability of any student's grades were adversely affected by the fact that the College was on probation with the Southern Association for the relevant period. Accordingly, the plaintiff's claim for fraudulent misrepresentation is flawed on the merits.

## C. Statute of limitations as to plaintiff's civil rights action

The Court also finds that the plaintiff's Title VI claim is barred by the applicable one-year statute of limitations. Tenn. Code Ann. § 28-3-102(a)(3); *see also Boyd v. Tennessee Dept. of Educ.,* 210 F.3d 371 (6th Cir. 2000) (Table); *Simmons v. Middle Tenn. State Univ.*, No. 95-6111, 1997 WL 400105, at *2-3 (6th Cir. July 11, 1997); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). The limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim. *See Sevier v. Turner,* 742 F.2d 262, 273 (6th Cir. 1984); *Hughes v. Vanderbilt University*, 215 F.3d 543, 547-48 (6th Cir. 2000). Plaintiff himself states that he was denied registration in courses by defendant in September of 2004. Further, plaintiff was advised by his instructor on October 18, 2004, that he was not enrolled in the class and that his assigned work would not be graded. Since plaintiff waited to file his suit until October 25, 2005, plaintiff's Title VI claim is time-barred, which is an additional dismissal ground for plaintiff's Title VI claim.

## D. No civil rights violation

As a second alternative dismissal ground for plaintiff's Title VI claim, the Court finds that the plaintiff has not established a civil rights violation. Plaintiff baldly asserts that "several" students were treated differently, or more favorably, in that they were permitted

13

to change a course registration to effect a change of cohorts in a manner the plaintiff claimed he wanted to do, but was not allowed to do. Nowhere in the record does the plaintiff support this contention with evidence, by way of affidavits from these students or otherwise.[4] Rather, plaintiff merely alludes to one student, Smith-Figueroa, an African-American, who allegedly received preferential treatment. Without the requisite supporting evidence, such as deposition testimony, affidavit, or otherwise, plaintiff's claim based on vague and conclusory statements falls short of the standard to survive summary judgment.

In his argument, the plaintiff asserts that since he is a pro se litigant he is entitled to a degree of leniency. The Court is cognizant that the plaintiff, as a pro se litigant, is held to a more relaxed standard, *see Spencer v. Bouchard*, 449 F.3d 721 (6th Cir. 2006); however, this relaxed standard has limits and does not relieve a pro se litigant from the usual requirements of summary judgment. *See Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999).

### E. Claim of educational malpractice

In plaintiff's response to the defendant's summary judgment motion, the plaintiff concedes that he "does not believe that the language of Educational Malpractice has ever been used by [himself] in any document filed with the Court." As such, the plaintiff waives any such claim. Moreover, the Sixth Circuit has stated, ". . . we note that this case arises

---

[4]By his own admission, plaintiff states that "[t]hese students have completed the program and have offered no information with respect to discrimination on the part of defendant."

in an academic context where judicial intervention in any form should be undertaken only with the greatest reluctance." *Doherty v. Southern College of Optometry*, 862 F.2d 570, 576 (6th Cir. 1989). "Courts are not inclined to review educational malpractice claims or breach of contract claims based on inadequate educational services. *Hutchings v. Vanderbilt University*, 55 Fed.Appx. 308, 310 (6th Cir. 2003).

### IV.  CONCLUSION

For the reasons hereinabove set forth, defendant's motion to dismiss [Doc. 31] is **GRANTED**.

**IT IS SO ORDERED.**

        **ENTER:**

        s/Thomas W. Phillips
        UNITED STATES DISTRICT JUDGE